State of Iowa ex rel. Vernon R. Seeburger, County Attorney, Appellee, v. Joe DeLeon et al., Appellants.

**INTOXICATING LIQUORS: Injunction—Knowledge of Owner.** An
1  injunction is properly decreed against the owner of real property even though such owner had no knowledge of the violation of the law by his tenant.

**INTOXICATING LIQUORS: Mulct Tax—Knowledge of Owner.**
2  Neither a mulct tax nor the attorney fees and costs attending the proceedings can properly be imposed upon real property and against the owner thereof when the owner did not know and did not have reason to know of the existence of the liquor nuisance on his premises.

Headnote 1:  33 C. J. p. 696.  Headnote 2:  33 C. J. pp. 700, 701.

Headnote 1:  10 A. L. R. 1553.

*Appeal from Polk District Court.*—Hubert Utterback, Judge.

November 15, 1927.

Action for a permanent injunction to restrain the defendants from maintaining a liquor nuisance. The district court granted an injunction against the property and against all defendants, and assessed a mulct tax of $600 against all the defendants and the property, and taxed the costs, including an attorney fee, against all defendants. The defendants Hester Tolchinsky and Abe Friedman appeal.—*Reversed.*

*A. L. Steele,* for appellants.

*Vernon R. Seeburger* and *C. I. McNutt,* for appellee.

WAGNER, J.—The real estate involved is owned by the appellants Hester Tolchinsky and Abe Friedman. The defendant Joe DeLeon has a lease for the real estate in controversy, and conducted a pool hall in the building situated thereon. On search made, under search warrant, on February 3, 1926, 3 half-pint bottles of moonshine whisky were found in the cellar, under a piece of cardboard. Shortly thereafter, this suit was commenced against the tenant and the owners of the property. The district court granted a permanent injunction against the property and all defendants, and assessed a mulct tax of $600 against all defendants and the property, and rendered judgment against all of said parties for the costs of suit, including an attorney fee of $25.

No order of abatement of the nuisance was made by the trial court. For the failure of the court to grant such order the State has not appealed, nor do the appellant property owners complain because thereof.

The petition does not allege that the appellants knew, or ought in reason to have known, of the nuisance alleged to have been maintained; but no objection as to this matter was made in the trial court, and therefore the same needs no consideration.

The appellants complain that an injunction should not have been issued against them as to the property, for the reason, as claimed, that they did not know, and had no reason to know, 

1. INTOXICATING LIQUORS: injunction: knowledge of owner. that a nuisance was being maintained on the premises by their tenant. We have held that, when a decree of injunction is granted against the tenant, an injunction shall be granted as against the property, regardless of whether or not the owner of the property had knowledge of the nuisance. *State ex rel. Seeburger v. Pickett,* 202 Iowa 1321. It is obvious that the appellants have no just cause for complaint of the injunction against them as to the property.

The appellants contend that the mulct tax should not have been assessed against them and their property, and that judgment should not have been rendered against them for the costs,

2. Intoxicating Liquors: mulct tax: knowledge of owner.  based upon the same reason, as stated, that they had no knowledge of the maintenance of the nuisance, and that the facts as shown by the record fail to show that they ought to have known of the same. Section 2051, Code of 1924, provides:

. "When a permanent injunction shall issue against any person for maintaining a nuisance as herein defined or against any owner or agent of the building kept or used for the purposes prohibited by this title, a tax shall be imposed upon said building and upon the ground upon which the same is located, and against the persons maintaining said nuisance and against the owner or agent of said premises, when they knew, or ought in reason to have known, of said nuisance."

It is further provided by our statutory law that, in all actions to enjoin a nuisance, evidence of the general reputation of the place described in the petition is admissible, for the purpose of proving the existence of the nuisance. Section 2022, Code of 1924. Our statute also contains the following provision:

"On the issue whether a party knew or ought to have known of such nuisance, evidence of the general reputation of the place shall be admissible." Section 2053, Code of 1924.

The record in the instant case is somewhat similar to the record in the case of *State ex rel. Seeburger v. Pickett,* supra. The question is whether, under the evidence, the appellants knew, or ought in reason to have known, of said nuisance. We therefore turn to the evidence in the case for the answer to the question. It appears therefrom that, on February 3, 1926, three policemen, armed with a search warrant, entered DeLeon's place of business, and made search of the premises. They found the tenant in his place of business, and entered the basement from the pool room, and one of the officers found in the cellar the 3 half pints of moonshine under a piece of cardboard. The liquor was found near the furnace. There was evidence that some repair work had been done by plumbers upon the toilet located in the basement. The officers were familiar with the place, and had occasionally visited there, and never saw anybody drinking. One of the officers testified that, at the time of the search, they also found 3 or 4 empty half-pint bottles at the foot of the stairway landing. There is no evidence of any sale

of intoxicating liquor on or about the premises. The three policemen making the search testified that the general reputation of DeLeon's place was bad, as did also a captain of the liquor squad.

Two other policemen were called in behalf of the defendants, and one of them gave testimony to the fact that he had been a policeman for nine years; that he was acquainted with DeLeon, and knew where his place of business was; that he had been in his place of business, and in the basement at different times; that DeLeon had told him that, if at any time he saw any bootlegging around there, it was his desire that the guilty ones be thrown out, and that he was trying to run a clean place; that DeLeon's reputation is good; that he has never seen anything that would indicate that DeLeon was keeping liquor in or about his place of business, for illegal uses, or that the premises were being used for the purpose of selling or keeping intoxicating liquors. Another policeman testified, in substance, that he had been such officer for nine years, and was acquainted with DeLeon, was a frequent visitor at his place of business; that DeLeon's reputation is all right,—had never heard anybody say that he sold liquor; that there had never been anything to lead him to believe that DeLeon was engaged in trafficking or selling intoxicating liquors, or permitting the building to be so used.

A witness whose place of business is adjoining the place in question testified as to his familiarity with reference thereto, and that he had never seen any indication that the DeLeon place of business was used for the keeping or selling of intoxicating liquors, and never heard it classed as such.

Another witness living in the vicinity gave testimony that he had never seen anything that would indicate that DeLeon was engaged in any unlawful business.

The appellant Friedman testified that he went to the place in question as often as twice a week, and never saw anything that would indicate that DeLeon was trafficking in intoxicating liquor, and that, had he known it, he would have stopped it.

The husband of the other appellant testified that he had been on the premises three or four times a week, and had never seen anything that would indicate that the place was being used for trafficking in intoxicating liquor.

DeLeon's testimony was to the effect that he had never been accused of violating the liquor laws; that any liquor found was not his liquor, and was not taken there by him; that, when the search was made, about one o'clock, the plumbers who had been working in the basement had gone out to lunch; that the toilet was in the basement, and was used by his customers.

The law-enforcing officers differ materially as to the reputation of. DeLeon and his place of business. The question naturally arising is whether, under this record, it can be said that the appellants knew, or ought to have known, that a nuisance was being maintained on their premises. We cannot answer in the affirmative. .

It is our conclusion that the State has not sustained the burden of proof placed upon it, in this case, sufficiently to warrant the court in entering a mulct tax against the appellants and their property.

Since we hold that, under the record, it is not shown that the appellants had knowledge of the maintenance of any nuisance, it follows that it was improper to tax against them the costs, including attorney fees. *State ex rel. Seeburger v. Pickett,* supra; *Drake v. Kingsbaker,* 72 Iowa 441; *State v. Knapp,* 178 Iowa 25; *Morgan v. Koestner,* 83 Iowa 134.

We therefore hold that the decree of the court in assessing the mulct tax of $600 against the defendants and the property, and in entering judgment against the defendants for the costs, including an attorney fee of $25,. was erroneous; and our conclusion necessitates a reversal, in so far as said matters are concerned.—*Reversed.*

EVANS, C. J., and DE GRAFF, ALBERT, and MORLING, JJ., concur.